1
2
3
4
5

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG CHRISTOPHER LEON, ) | 1:08-cv-01979 JMD (HC) |
| ) | |
| Petitioner, ) | ORDER DENYING PETITION FOR WRIT |
| ) | OF HABEAS CORPUS |
| v. ) | |
| ) | ORDER DIRECTING CLERK OF COURT |
| ) | TO ENTER JUDGMENT |
| KEN CLARK, Warden, ) | |
| ) | ORDER DECLINING ISSUANCE OF |
| Respondent. ) | CERTIFICATE OF APPEALABILITY |
| _____ ) | |

Craig Christopher Leon (Petitioner) is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Both parties consented, pursuant to Title 18 U.S.C. § 636(c)(1), to have a magistrate judge conduct all further proceedings, including entry of final judgment.  The case was reassigned to the undersigned on July 8, 2010.

**PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) serving a third strike term of twenty-five years to life.  Petitioner was convicted of transportation and possession of heroin for sale in the Stanislaus County Superior Court.

Petitioner appealed the judgment to the California Court of Appeal, Fifth Appellate District, on April 4, 2006.  The court affirmed the judgment in a reasoned opinion filed August 21, 2007.

Petitioner filed a petition for review with the California Supreme Court on October 2, 2007. The court denied the petition without comment on November 14, 2007.

1    Petitioner filed the instant petition for writ of habeas corpus on September 24, 2008.

2    Respondent filed an answer on November 13, 2009.

3                              **FACTUAL BACKGROUND** [1]

4        Around 11:30 a.m. on December 12, 2004, Modesto Police Officer Ron
5    Johnson was on patrol when he approached the intersection of Third and J Streets.
     Johnson was traveling eastbound on Third Street and did not have a stop sign at the
6    intersection. A pickup truck pulled in front of Johnson and almost hit his patrol car.
     Johnson testified that he noticed there were two people in the truck when it crossed in
7    front of him. Johnson hit the brakes and avoided a collision, and immediately
     activated the patrol car's emergency lights to perform a traffic stop of the pickup
8    truck. The pickup truck complied and pulled over.
         Officer Johnson, who was by himself, walked to the driver's side of the truck
9    and contacted the driver, appellant Craig Christopher Leon. James Melton was sitting
     in the right front passenger seat, about three and a half feet from appellant. The
10   vehicle was a 2002 Chevrolet standard full-size pickup truck. Johnson checked the
     vehicle's title and determined the truck was registered to appellant.
11       Officer Johnson advised appellant about the reason for the traffic stop and
     asked for his driver's license. Johnson also asked appellant to step out of the truck so
12   he could perform a patdown search.[2]  Appellant left the driver's door open when he
     got out of the truck. Johnson directed appellant to face the vehicle near the open
13   driver's door and place his hands on top of his head, and Johnson conducted the
     patdown search. Johnson stood directly behind appellant as he conducted the patdown
14   search. Appellant did not say anything during the search.
         Officer Johnson testified a backup officer arrived just as he asked appellant to
15   step out of the truck. The officer was on the other side of the truck. Johnson testified
     Melton remained in the truck's front seat during the patdown search, and Johnson was
16   able to see Melton "[p]art of the time" but not all of the time as he searched appellant.
         "Q And during the search your focus is on [appellant] as opposed to Mr.
17   Melton."
         "A Well, no, that's not necessarily true. [¶] I mean, I try to train myself to keep
18   my eyes on everything that's going on. When I have two people I am thinking about
     two people. Obviously I can't watch both, but I'll be back and forth looking at both
19   parties."
         "Q But your primary attention was on [appellant] and not Mr. Melton?"
20       "A Yes."
         Johnson explained it was important to watch for movement in the car for
21   officer safety reasons. "You just have to keep an eye on all your parties and make sure
     that nothing happens."
22       Officer Johnson testified he conducted the patdown search of appellant,
     including his upper torso, legs, and ankles.
23       "Q At some point you bend down to search the legs and ankle areas of

24   _____

25   [1] All Factual Backgrounds quoted in this order are taken from the factual summaries set forth by the California Court
     of Appeal, Fifth Appellate District, in its opinion of August 21, 2007, and is presumed correct pursuant to 28 U.S.C. §§
26   2254(d)(2), (e)(1).  See People v. Leon, No. F050100, 2007 WL 2367852, at *1-4 (Cal. Ct. App. Aug. 21, 2007); (Lodged
     Doc. 1, 3-8).

27   [2] According to the probation report, Officer Johnson determined appellant was on parole, appellant confirmed he
28   was on parole, and Johnson conducted the patdown and vehicle searches pursuant to the terms of his parole. The trial court
     excluded evidence as to appellant's parole status and the reasons behind the searches.

[appellant]?"

"A That's correct."

"Q And, clearly, as you're doing that, you can't see into the vehicle; right?"

"A Not true. When I'm looking down, now, obviously I can't see the vehicle. But while I'm standing there I have a view of probably three quarters of the pickup through the open door. I can't see Mr. Melton very well, but I can see that area that is in my view."

The patdown search lasted about a minute and a half. Appellant was in possession of a cell phone and $99.

After Officer Johnson completed the patdown search, he advised appellant that he was going to search the pickup truck, and walked toward the open driver's door. Johnson testified appellant "appeared to get nervous and asked me why I was searching the truck." Johnson "explained to him why I was searching the truck. And then due to the fact that he was acting a little nervous I asked him to step back to the rear of the truck with another officer." Johnson moved appellant just behind the back window of the pickup, "so we were right next to the cab of the pickup." Johnson testified he did not see any furtive movements from Melton in the front passenger seat, and did not see Melton place or move anything in the vehicle.

Officer Johnson testified he searched the vehicle and found a couple of leather gloves just above the steering wheel. Johnson checked the gloves and "felt that one of the gloves which was the left glove had something inside that was hard." Johnson opened the glove and "there was something wrapped in plastic inside the glove." Johnson removed the item and discovered 11.53 grams of "black tar heroin wrapped in clear plastic." Johnson immediately ordered Melton to step outside the truck, where another officer was standing. Johnson placed appellant in handcuffs and put him into the back of the patrol car.

Officer Johnson testified he had not noticed the gloves when he initially approached the driver's side of the vehicle and spoke to appellant after the traffic stop.

"Q Fair to say that you don't have any firsthand information as to how the glove got there?"

"A No."

"Q ... You don't know how the glove got there."

"A No, there would be no way for me to know that."

"Q You don't know if Mr. Melton put it there."

"A I was pretty positive that Mr. Melton didn't put it there because the location of where I was standing with the door open. If there was any movement or somebody tossed the glove or tried to reach over and put the gloves way over by the steering wheel, that's a vantage point that I have in the view."

Johnson testified he did not see "any movement" while he was outside the truck with appellant. "If somebody reached over and tossed them, it would have been in my view."

"Q You didn't see the glove there, though, when you first approached [appellant]; right?"

"A I can't say I didn't see them. I didn't pay any attention to them. The only time I paid attention to them is when I picked it up and felt something inside and it turned out to be heroin."

Officer Johnson believed the other officer searched Melton, but he was not sure if the search occurred and did not know whether Melton was found in possession of any narcotics paraphernalia. Johnson did not ask Melton about the heroin or the gloves. Johnson testified Melton was eventually released because there were no outstanding warrants for him.

Officer Johnson testified that after he arrested appellant, he did not ask any questions and appellant never said the heroin and/or the glove belonged to him. However, appellant spontaneously said "that he'd liked to work this off and he could take me all the way up to the top of the narcotics ladder, basically, something to that

effect." Appellant said "he was tired of this and he wanted to get out of it." Johnson had not found any indicia of use when he searched appellant. He inspected appellant's arm to look for injection sites and did not find any. Johnson "made a comment to him, and he said he puts it in his muscle," that he injected heroin into a muscle rather than a vein. Johnson inspected the muscle area but did not see any injection sites. Johnson never made any promises to appellant in response to his offer to "work it off."

Officer Carlos Ramirez testified that 11.53 grams of heroin were worth over $1,000 on the street, and capable of producing 115 individual doses. It was more than a usable amount and, based on his expertise, it would be possessed for sale because a heroin user "usually does not usually carry that much with them for the sheer amount." In addition, a heroin user would possess paraphernalia to ingest the heroin, such as aluminum foil, needles, a spoon, matches, or "anything to light it up and use it." A person who injected heroin would have needle marks that remain from three days to a week. Most heroin addicts use heroin once or twice a day. In Ramirez's opinion, a person who possessed that amount of heroin without any indicia of use most likely possessed it for sale.

In closing argument, the prosecutor argued the evidence showed appellant transported and possessed heroin for sale. There was no doubt heroin was in his car and that appellant knew he possessed a controlled substance, because once he was caught, appellant immediately offered to give the police "somebody else higher up on the food chain." Appellant possessed the drugs for sale based on the large amount and the absence of any evidence he was using drugs. The prosecutor refuted appellant's expected argument that Melton threw the gloves onto the driver's side of the truck. The prosecutor noted that Officer Johnson did not see any movement from the passenger side as he searched appellant, and that he watched the other side of the truck for officer safety reasons.

Defense counsel argued it was pure speculation that appellant knew the heroin was in the truck, the case was built on circumstantial evidence, and the prosecution failed to meet the burden of proof. Defense counsel argued the evidence showed "it could have been either way," such that the heroin could have belonged to appellant or Melton, but if the evidence could go either way, then the jury had to reject the conclusion that appellant was guilty. Counsel noted Officer Johnson admitted he did not notice the gloves when he initially approached the driver's side of the truck, and that he did not constantly watch the vehicle's interior as he searched appellant. Counsel also addressed appellant's statements to Johnson, about working off the matter, and argued that appellant never admitted possessing the drugs but knew the drugs had been found in the truck and Melton had been allowed to leave. Appellant did not accept any responsibility but knew he had two prior convictions and he was in trouble, and he was looking for a way "to mitigate or minimize any adverse effects," and it was just speculation to interpret appellant's statements any other way. In the alternative, counsel argued there was no evidence appellant possessed the drugs for sale, Officer Ramirez knew nothing about this case, and the jury should not rely on his opinion.

In rebuttal, the prosecutor refuted defense counsel's claim there was no evidence in this case, and argued there was a large amount of heroin on appellant's side of the truck, appellant offered to work off the matter because "he knew about the heroin," and "that's enough."

Appellant was convicted of transportation and possession of heroin for sale. He admitted the three prior prison term enhancements and the jury found the two prior strike convictions to be true. The court denied his motion to dismiss one prior strike conviction, and he was sentenced to the third strike term of 25 years to life. On appeal, he contends both convictions must be reversed because the evidence is legally insufficient to establish possession. He also raises several challenges to the true findings for the two prior strike convictions-that he was denied the right to a jury trial on all elements of the special allegations, and the court improperly admitted a CLETS

rap sheet as evidence of one of the prior convictions.[3] Finally, he contends the court abused its discretion when it denied his motion to dismiss one prior strike conviction pursuant to section 1385 and <u>People v. Superior Court</u> (Romero) (1996) 13 Cal.4th 497 ( Romero ).

### DISCUSSION

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); <u>Williams v. Taylor</u>, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction in question arose out of a judgment by the Stanislaus County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting <u>Drinkard v. Johnson</u>, 97 F.3d 751, 769 (5th Cir. 1996), overruled on other grounds by <u>Lindh</u>, 521 U.S. 320 (1997)) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

---

[3]CLETS stands for the California Law Enforcement Telecommunications System. ( <u>People v. Martinez</u> (2000) 22 Cal.4th 106, 113 ( Martinez ).)

1   States" or "resulted in a decision that was based on an unreasonable determination of the facts in

2   light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer,

3   538 U.S. at 70-71; see Williams, 529 U.S. at 413.

4        As a threshold matter, this Court must "first decide what constitutes 'clearly established

5   Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. 63, 71

6   (2003) (quoting 28 U.S.C. § 2254(d)(1)).  In ascertaining what is "clearly established Federal law,"

7   this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

8   of the time of the relevant state-court decision." Id. (quoting Williams, 592 U.S. at 412.  "In other

9   words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

10  principles set forth by the Supreme Court at the time the state court renders its decision." Id.

11       Finally, this Court must consider whether the state court's decision was "contrary to, or

12  involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,

13  (quoting 28 U.S.C. § 2254(d)(1)).  "Under the 'contrary to' clause, a federal habeas court may grant

14  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

15  question of law or if the state court decides a case differently than [the] Court has on a set of

16  materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.

17  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court

18  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

19  that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

20       "[A] federal court may not issue the writ simply because the court concludes in its

21  independent judgment that the relevant state court decision applied clearly established federal law

22  erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A

23  federal habeas court making the "unreasonable application" inquiry should ask whether the state

24  court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

25       Petitioner has the burden of establishing that the decision of the state court is contrary to or

26  involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,

27  94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

28  Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

1   decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.

2   1999).

3          AEDPA requires that the federal habeas court give considerable deference to state court

4   decisions.  The state court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we

5   are bound by a state's interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.

6   2002), cert. denied, 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

7          Thus, the initial step in applying AEDPA's standards is to "identify the state court decision

8   that is appropriate for our review."  Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).  Where

9   more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last

10  reasoned decision.  Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) for the presumption

11  that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same

12  ground as the prior order).  The Ninth Circuit has further stated that where it is undisputed that

13  federal review is not barred by a state procedural ruling, "the question of which state court decision

14  last 'explained' the reasons for judgement is therefore relevant only for purposes of determining

15  whether the state court decision was 'contrary to' or an 'unreasonable application of' clearly

16  established federal law."  Bailey v. Rae, 339 F.3d 1107, 1112-1113 (9th Cir. 2003).  Thus, a federal

17  habeas court looks through ambiguous or unexplained State court decisions to the last reasoned

18  decision in order to determine whether that decision was contrary to or an unreasonable application

19  of clearly established federal law.  Id.

20         Here, the California Court of Appeal and the California Supreme Court both adjudicated

21  Petitioner's claims.  As the California Supreme Court issued a summary denial of Petitioner's

22  claims, the Court "look[s] through" that court's decision to the last reasoned decision; namely, that

23  of the appellate court.  See Ylst v. Nunnemaker, 501 U.S. at 804.

24  **III.  Review of Petitioner's Claims**

25         Petitioner raises the following eight grounds for relief: (1) Petitioner was subject to an illegal

26  search and seizure in violation of the Fourth Amendment and his counsel's failure to move to

27  suppress the evidence therefrom constituted ineffective assistance of counsel in violation of the Sixth

28  Amendment; (2) Petitioner's statements to the police were the product of an illegal search and

seizure thereby violating his Fourth Amendment rights; (3) there was insufficient evidence on which the jury could rely in finding Petitioner guilty of possession of heroin for the purpose of sale; (4) there was not sufficient evidence on which the jury could rely in finding Petitioner guilty of possession of heroin; (5) the superior court violated Petitioner's Sixth Amendment rights by making a finding as to Petitioner's identity regarding prior convictions instead of leaving the question of identity to the jury; (6) counsel was ineffective in violation of Petitioner's Sixth Amendment rights by conceding that Petitioner suffered the alleged prior strike convictions; (7) a CLETS rap sheet is insufficient evidence to prove that Petitioner had suffered the alleged prior strike convictions; and (8) the trial court abused its discretion in refusing to strike one of Petitioner's prior strike convictions in violation of his Fifth, Eighth, and Fourteenth Amendment rights.

Exhaustion of State Remedies

Respondent argues that Petitioner did not exhaust Grounds One, Two, or Three in state court.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations.  Coleman v. Thompson, 501 U.S. 722, 731 (1991);  Rose v. Lundy, 455 U.S. 509, 518 (1982);  Wooten v. Kirkland, 540 F.3d 1019, 1023 (9th Cir. 2008).

A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citing Duncan v. Henry, 513 U.S. 364, 365 (1995)); Fields v. Waddington, 401 F.3d 1018, 1020 (9th Cir. 2005).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 5 (1992) (factual basis).

Additionally, the petitioner must have specifically told the state court that he was raising a federal constitutional claim.  Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), amended, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.

1    1999); <u>Keating v. Hood</u>, 133 F.3d 1240, 1241 (9th Cir. 1998).  In <u>Duncan</u>, the United States

2    Supreme Court reiterated the rule as follows:

3           In <u>Picard v. Connor</u>, 404 U.S. 270, 275 . . . (1971), we said that exhaustion
       of state remedies requires that petitioners "fairly presen[t]" federal claims to the
4      state courts in order to give the State the "'opportunity to pass upon and correct
       alleged violations of the prisoners' federal rights" (some internal quotation marks
5      omitted). If state courts are to be given the opportunity to correct alleged violations
       of prisoners' federal rights, they must surely be alerted to the fact that the prisoners
6      are asserting claims under the United States Constitution. If a habeas petitioner
       wishes to claim that an evidentiary ruling at a state court trial denied him the due
7      process of law guaranteed by the Fourteenth Amendment, he must say so, not only
       in federal court, but in state court.
8
     <u>Duncan</u>, 513 U.S. at 365-366.  The Ninth Circuit examined the rule further, stating:
9
            Our rule is that a state prisoner has not "fairly presented" (and thus
10     exhausted) his federal claims in state court *unless he specifically indicated to*
       *that court that those claims were based on federal law*. <u>See</u> <u>Shumway v. Payne</u>,
11     223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in
       <u>Duncan</u>, this court has held that the *petitioner must make the federal basis of the*
12     *claim explicit either by citing federal law or the decisions of federal courts, even*
       *if the federal basis is "self-evident*," <u>Gatlin v. Madding</u>, 189 F.3d 882, 889
13     (9th Cir. 1999) (<u>citing</u> <u>Anderson v. Harless</u>, 459 U.S. 4, 7 . . . (1982), or the
       underlying claim would be decided under state law on the same considerations
14     that would control resolution of the claim on federal grounds. <u>Hiivala v. Wood</u>,
       195 F.3d 1098, 1106-07 (9th Cir. 1999); <u>Johnson v. Zenon</u>, 88 F.3d 828, 830-31
15     (9th Cir. 1996); . . . .
            In <u>Johnson</u>, we explained that the petitioner must alert the state court to
16     the fact that the relevant claim is a federal one without regard to how similar the
       state and federal standards for reviewing the claim may be or how obvious the
17     violation of federal law is.

18   <u>Lyons</u>, 232 F.3d 666, 668-669 (italics added).

19          Petitioner admits that he failed to present Grounds One, Two, and Three before the State

20   supreme court.  Because the State court did not have a full and fair opportunity to rule on those

21   grounds, they are unexhausted.  A federal habeas court may, however, deny an application for a writ

22   of habeas corpus on the merits, "notwithstanding the failure of the applicant to exhaust the remedies

23   available in the courts of the State." 28 U.S.C. § 2254(b)(2).  The Ninth Circuit has adopted the

24   standard that holds that "a federal court may deny an unexhausted petition on the merits only when it

25   is perfectly clear that the applicant does not raise even a colorable federal claim."  <u>Cassett v. Stewart</u>,

26   406 F.3d 614, 623-24 (9th Cir. 2005) (adopting the standard set forth in <u>Granberry v. Greer</u>, 481 U.S.

27   129, 135 (1987)).  Accordingly, the Court will proceed to the merits of Grounds One, Two, and

28   Three.

1  \\

2  <u>Ground One</u>

3      Petitioner claims that he was subject to an illegal search and seizure in violation of his Fourth

4  Amendment rights and that his counsel was ineffective in not moving to suppress the evidence from

5  the search.  While the crux of both these claims are centered around Petitioner's allegation that the

6  search of his person and car was carried out in violation of the Fourth Amendment, Petitioner is

7  actually raising two separate and distinct claims: (1) illegal search and seizure and (2) ineffective

8  assistance of counsel.  <u>See</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986).  The Fourth

9  Amendment claim is based in the exclusionary rule, which is a "judicially created remedy rather than

10  a personal constitutional right," <u>Reed v. Farley</u>, 512 U.S. 339, 348 (1994), and thus requires a

11  different standard of review than the right to counsel, which is a fundamental right, <u>Morrison</u>, 477

12  U.S. at 374.  Accordingly, the Court will analyze the two claims separately.

13      *Ineffective Assistance of Counsel*

14      Petitioner claims that his counsel was ineffective in failing to move to suppress the evidence

15  found as a result of the search, thereby violating his Sixth Amendment right to counsel.

16      An allegation of ineffective assistance of counsel requires that a petitioner establish two

17  elements: (1) counsel' s performance was deficient and (2) petitioner was prejudiced by the

18  deficiency.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Lowry v. Lewis</u>, 21 F.3d 344, 346

19  (9th Cir. 1994).   Under the first element, the petitioner must establish that counsel's representation

20  fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions

21  which did not fall within reasonable professional judgment considering the circumstances.

22  <u>Strickland</u>, 466 U.S. at 688; <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1348 (9th Cir. 1995).

23  Judicial scrutiny of counsel's performance is highly deferential and there exists a "strong

24  presumption that counsel's conduct [falls] within a wide range of reasonable professional assistance;

25  that is, the defendant must overcome the presumption that, under the circumstances, the challenged

26  action 'might be considered sound trial strategy.'"  <u>Strickland</u>, 466 U.S. at 687 (quoting <u>Michel v.</u>

27  <u>Louisiana</u>, 350 U.S. 91, 101 (1955)) ; <u>Sanders v. Ratelle</u>, 21 F.3d 1446, 1456 (9th Cir. 1994).

28      Second, the petitioner must show that counsel's errors were so egregious that the petitioner

1  was deprived of the right to a fair trial, namely a trial whose result is reliable.  Strickland, 466 U.S. at

2  687.   To prevail on the second element, the petitioner bears the burden of establishing that there

3  exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the

4  proceeding would have been different.  A reasonable probability is a probability sufficient to

5  undermine confidence in the outcome." Quintero-Barraza, 78 F.3d at 1348 (quoting Strickland, 466

6  U.S. at 694).  Accordingly, in a case where the principal allegation of ineffectiveness is defense

7  counsel's failure to litigate a Fourth Amendment claim competently, the petitioner "must also prove

8  that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the

9  verdict would have been different absent the excludable evidence in order to demonstrate actual

10  prejudice." Morrison, 477 U.S. at 375.

11          A court need not determine whether counsel's performance was deficient before examining

12  the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. at

13  697.  Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any

14  deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective

15  assistance of counsel claim.  Id.  Respondent argues that Petitioner has failed to meet his burden of

16  proof to show that the search was unlawful. (Answer, Nov. 13, 2009, ECF No. 17.)  The Court

17  agrees. The record indicates that Officer Johnson had a lawful reason for pulling the truck over–the

18  fact that the truck almost hit the patrol car.  The record further indicates that Officer Johnson

19  determined that Petitioner was on parole, which Petitioner confirmed, and then conducted the search

20  pursuant to the terms of Petitioner's parole.  Petitioner argues that the search violated his Fourth

21  Amendment rights because he did not consent.  This argument is without merit because the record

22  indicates that the terms of Petitioner's parole allowed the search, rendering his consent unnecessary.

23  It appears that the search was lawful, thus, trial counsel's failure to file a suppression motion does

24  not fall below an objective standard of reasonableness.  Accordingly, Petitioner's claim is meritless.

25          *4th Amendment*

26          Petitioner claims that he was searched unlawfully in violation of his Fourth Amendment right

27  to be free from unreasonable search and seizure.

28          A federal district court cannot grant habeas corpus relief on the ground that evidence was

1  obtained by an unconstitutional search and seizure if the state court has provided the petitioner with a

2  "full and fair opportunity to litigate" the Fourth Amendment issue.  Stone v. Powell, 428 U.S. 465,

3  494 (1976); Moormann v. Schriro, 426 F.3d 1044, 1053 (9th. Cir. 2005); Woolery v. Arvan, 8 F.3d

4  1325, 1326 (9th Cir. 1993).  The only inquiry this Court can make is whether Petitioner had a fair

5  opportunity to litigate his claim, not whether the court correctly decided the claim or even whether

6  Petitioner actually litigated the claim.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996);

7  see also, Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990) (holding that because Cal. Penal Code

8  § 1538.5 provides an opportunity to challenge evidence, dismissal under Powell was necessary).

9       The policy behind the Powell court's analysis is that the exclusionary rule is applied to stop

10  future unconstitutional conduct of law enforcement.  Powell, 428 U.S. at 492.  However, excluding

11  evidence that is not untrustworthy creates a windfall to the defendant at a substantial societal cost.

12  See id., at 489-90; Woolery, 8 F.3d at 1327-28.  Thus, the Ninth Circuit has described the rationale

13  for this rule by stating:

> The holding is grounded in the Court's conclusion that in cases where a petitioner's
> Fourth Amendment claim has been adequately litigated in state court, enforcing the
> exclusionary rule through writs of habeas corpus would not further the deterrent and
> educative purposes of the rule to an extent sufficient to counter the negative effect
> such a policy would have on the interests of judicial efficiency, comity and
> federalism.

17  Woolery. 8 F.3d at 1326; see also Powell, 428 U.S. at 493-494.

18       Here, Petitioner gives no indication that the State court failed to provide him with a full and

19  fair opportunity to litigate the legality of the search.  Petitioner only points to his counsel's failure to

20  move to suppress the evidence to argue that he was never provided a full and fair opportunity to

21  litigate the issue.  Only if Petitioner's counsel has been found to have been ineffective could this

22  argument prevail; however, as discussed above, counsel was not constitutionally ineffective in

23  choosing not to move to suppress the evidence.  Thus, Petitioner was given a full and fair

24  opportunity to address the suppression issue at trial and his claim is not cognizable on federal habeas

25  review.

26  Ground Two

27       Petitioner claims that his statements to the police were the product of an illegal search and

1   seizure, thereby violating his Fourth Amendment rights.

2          As discussed above, <u>Stone v. Powell</u>, 428 U.S. 465, only allows for federal habeas review of

3   Fourth Amendment claims if Petitioner was not given a full and fair opportunity to litigate the issue

4   in state court.  As the illegal search and seizure of which Petitioner complains is the same as that

5   discussed in Ground One, Petitioner's argument that the fruits of the search, namely his statements,

6   should be suppressed must fail.   As discussed above, Petitioner's argument that the search was

7   unlawful could only be meritorious if counsel had been found to have been ineffective.  As

8   Petitioner's counsel was not constitutionally ineffective, Petitioner has no basis for claiming he was

9   not afforded a full and fair opportunity to litigate counsel's failure to move to suppress his statements

10  as the fruits of that search.  Accordingly, this claim is not cognizable on federal habeas review.

11  <u>Ground Three</u>

12         Petitioner claims that there is insufficient evidence to prove that he was in possession of

13  heroin for the purpose of sale.

14         "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the

15  sufficiency of the evidence used to obtain a state conviction on federal due process grounds." <u>Juan</u>

16  <u>H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005) (noting under AEDPA, a petition for habeas corpus

17  may only be granted where the state court's application of <u>Jackson v. Virgina</u>, 443 U.S. 307 (1979)

18  was objectively unreasonable).  A petitioner is "entitled to habeas corpus relief if it is found that

19  upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt

20  beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 324.  Pursuant to the Supreme Court's holding in

21  <u>Jackson</u>, the test to determine whether a factual finding is fairly supported by the record is as

22  follows, "whether, after reviewing the evidence in the light most favorable to the prosecution, any

23  rational trier of fact could have found the essential elements of the crime beyond a reasonable

24  doubt." <u>Jackson</u>, 443 U.S. at 319; <u>see also</u> <u>McDaniel v. Brown</u>, __ U.S. __, 130 S.Ct. 665 (2010)

25  (reaffirming the standard set forth in <u>Jackson</u>).  In cases where the evidence is unclear or would

26  support conflicting inferences, "the federal court 'must presume–even if it does not affirmatively

27  appear in the record–that the trier of fact resolved any such conflict in favor of the prosecution, and

28  must defer to that resolution.'" <u>Payne v. Borg</u>, 982 F.2d 335, 338 (9th Cir. 1993) (quoting <u>Jackson</u>,

443 U.S. at 326). "An additional layer of deference is added to this standard by 28 U.S.C. § 2254(d), which obliges [Petitioner] to demonstrate that the state court's adjudication entailed an unreasonable application of the quoted Jackson standard." Briceno v. Scribner, 555 F.3d 1069, 1078 (9th Cir. 2009) (citing Juan H., 408 F.3d at 1274).

Sufficiency of evidence claims are judged by "the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16. Furthermore, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to a state appellate court's determinations of fact as well as those of a state trial court. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir. 1990).

In this claim, Petitioner is not challenging the sufficiency of the evidence regarding his possession of the heroin, but rather the sufficiency of the evidence of his specific intent to sell the heroin. Section 11351 of the California Health and Safety Code states that:

> [e]xcept as otherwise provided in this division, every person who possesses for sale or purchases for purposes of sale (1) any controlled substance specified in subdivision (b), (c), or (e) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or specified in subdivision (h) of Section 11056, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, shall be punished by imprisonment in the state prison for two, three, or four years.

Cal. Heath & Saf. Code, § 11351.

> In order to secure a conviction of a violation of Health and Safety Code section 11351, the prosecution must prove beyond a reasonable doubt that (1) defendant exercised dominion and control over the controlled substance, (2) defendant was aware that he was in possession of a controlled substance, (3) defendant was aware of the nature of a controlled substance, (4) the controlled substance was in an amount sufficient to be used for sale or consumption as a controlled substance, and (5) defendant possessed a controlled substance with the specific intent to sell it. (CALJIC No. 12.01 (6th ed.1996); see also People v. Newman (1971) 5 Cal.3d 48, 53, 95 Cal.Rptr. 12, 484 P.2d 1356).

People v. Para, 70 Cal. App. 4th 222, 225-26 (Cal. Ct. App. 1999).

As discussed more fully in Ground Four, the appellate court's finding that Petitioner was in possession of the heroin was not an unreasonable application of federal law. What the Court must consider here, is whether Petitioner either possessed the specific intent to sell the heroin or possessed the specific intent that someone else would sell the heroin. Id. at 227.

The Court finds that there was sufficient evidence to support a finding of Petitioner's specific intent to sell the heroin. First, Officer Ramirez testified that Petitioner was in possession of 11.53 grams of heroin, which is approximately 115 individual doses and has a street value of over $1,000. It is well settled California law that "experienced officers may give their opinion that the narcotics are held for purposes of sale based upon such matters as quantity, packaging and normal use of an individual; on the basis of such testimony convictions of possession for purpose of sale have been upheld." Id. at 227. Any trier of fact could reasonably conclude that Petitioner would only have such a large quantity of drugs if he intended to sell some or all of it. Second, Officer Johnson testified that Petitioner told him "that he could take me all the way up to the top of the narcotics ladder" and that "he was tired of this and he wanted to get out if it." A jury could reasonably take these statements to mean that Petitioner was involved in the narcotics trade. Third, Officer Johnson did not find any paraphernalia or other indicia of drug use when he searched Petitioner nor did he find injection sites when he inspected Petitioner's arm. The finder of fact could reasonably infer that because Petitioner did not show signs of use, he had the heroin for the purpose of selling it. In light of the record evidence, the Court finds that a rational trier of fact could have found proof beyond a reasonable doubt of Petitioner's specific intent to sell the heroin. Accordingly, Petitioner cannot be granted relief as to Ground Three.

Ground Four

Petitioner claims there is insufficient evidence to prove that he was actually in possession of the heroin. As the State appellate court was the last court to issue a reasoned decision on this issue, the Court will examine whether its finding that Petitioner was in possession of the heroin was an unreasonable application of federal law. The appellate court reasoned as follows:

> Appellant's convictions for transportation and possession for sale of heroin are supported by substantial evidence. Appellant was driving the truck when he complied with Officer Johnson's traffic stop. Johnson found the gloves just above the steering wheel. One glove contained 11.53 grams of heroin. After he was arrested, appellant spontaneously told Johnson "that he'd liked to work this off and he could take me all the way up to the top of the narcotics ladder, basically, something to that effect." Appellant said "he was tired of this and he wanted to get out of it." As Johnson inspected appellant's arms for injection sites, appellant volunteered that "he puts it in his muscle," that he injected heroin into a muscle rather than a vein.

Appellant asserts the evidence was legally insufficient because Officer Johnson did not see the gloves when he initially approached appellant in the driver's seat, Johnson lost sight of Melton, the passenger, as he conducted the patdown search of appellant, and Melton had the motive and opportunity to "stash" the heroin into the glove, and place the glove above the steering wheel, while Johnson conducted the patdown search.

Defense counsel ably raised these issues during his cross-examination of Officer Johnson and in his closing argument, and thus raised conflicting factual inferences for the jury to resolve. However, there is nothing in the record which rendered the evidence inherently improbable or impossible to believe that appellant possessed the heroin found in the glove. Indeed, Johnson refused to concede that he did not actually see the gloves when he initially approached the driver's side of the truck. "I can't say I didn't see them. I didn't pay any attention to them. The only time I paid attention to them is when I picked it up and felt something inside and it turned out to be heroin." As for the patdown search, Johnson testified his primary attention was on appellant but he kept watching Melton for any furtive movements or gestures because of officer safety issues, even as he searched appellant's lower body.

"Q And, clearly, as you're doing that, you can't see into the vehicle; right?

"A Not true. When I'm looking down, now, obviously I can't see the vehicle. But while I'm standing there I have a view of probably three quarters of the pickup through the open door. I can't see Mr. Melton very well, but I can see that area that is in my view."

Johnson thus clarified that he could still see into the driver's side of the truck's interior through the open driver's door.

Finally, appellant's statements to Officer Johnson provided extremely strong evidence of his possession and knowledge of the nature of the substance found in the glove. Appellant makes much of the fact that he never claimed responsibility or ownership of the heroin, but his statements constituted the circumstantial equivalent of such a claim. Appellant volunteered to "work this off" and take Johnson "all the way up to the top of the narcotics ladder," and said he injected heroin into his muscle rather than a vein, thus inferring that he knew the item found in the glove was a controlled substance, and that he possessed the heroin because he would be able to tell Johnson where he obtained it.

There was thus overwhelming circumstantial evidence to support the jury's underlying finding that appellant possessed the heroin with the requisite knowledge. Defense counsel ably raised the possibility that Melton possessed the heroin and planted it on appellant's side of the vehicle, but the jury necessarily resolved the disputed factual issue against appellant and we cannot reweigh factual or credibility issues on appeal.

(Lodged Doc. 1, 11-13.)

The Court finds that the appellate court's decision is not an unreasonable application of the Jackson sufficiency of the evidence standard. As discussed above in Ground Three, Petitioner may only be granted habeas relief "if it is found that upon the record evidence adduced at the trial no

rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324.  In finding that Petitioner's conviction for possession was supported by substantial evidence, the appellate court relied on the fact that Petitioner was driving the truck in which the heroin was found just above the steering wheel as well as on Petitioner's spontaneous statements to Officer Johnson.  Petitioner asserts that this is not sufficient evidence because the passenger was left unattended in the truck before the officers searched the truck, thereby arguing the inference that the passenger could have placed the drugs on the dashboard while Petitioner was being questioned.  This argument is without merit at this stage as that scenario was already placed before the finder of fact and rejected.  As discussed above in Ground Three, the federal court must presume that the trier of fact resolved any evidentiary conflict in favor of the prosecution, and must defer to that resolution. Payne v. Borg, 982 F.2d at 338.  At trial, defense counsel tried to convince the jury that the drugs could have belonged to the passenger and not Petitioner.  The jury rejected the defense's theory and ultimately decided to find Petitioner guilty.  As this Court will not reweigh the evidence presented to the jury, the Court finds that the appellate court's finding that there exists "overwhelming circumstantial evidence to support the jury's underlying finding that [Petitioner] possessed the heroin with the requisite knowledge" is not an unreasonable application of the Jackson sufficiency of the evidence standard.  Accordingly, Petitioner cannot receive habeas relief as to Ground Four.

Grounds Five, Six, and Seven

Grounds Five, Six, and Seven, all relate to Petitioner's prior convictions.  The following background pertains to all three grounds.

**Factual Background[4]**

The amended information alleged appellant served three prior prison terms. On the first day of trial, appellant admitted the three prior prison term enhancements outside the jury's presence.

The amended information also alleged appellant suffered two prior strike convictions: robbery (§ 211) on or about June 21, 1989, in Alameda County Superior Court docket No. 97462; and robbery on January 9, 1992, in Stanislaus County Superior Court docket No. 272303. Appellant denied the allegations but did not move for bifurcation, and instead wanted the prior strike convictions tried to the jury during the trial on the substantive offenses.

In the midst of trial, the court conducted a hearing outside the jury's presence

---

[4] People v. Leon, No. F050100, 2007 WL 2367852, at *8-10; (Lodged Doc. 1, 14-16).

as to the identity of appellant as the person who suffered the two prior strike convictions. The prosecution introduced documentary exhibits consisting of certified copies of the records of conviction from the 1989 conviction in Alameda County (exhibit No. 2), and the 1992 conviction in Stanislaus County (exhibit No. 3), along with appellant's section 969, subdivision (b) package (exhibit No. 4), and a certified CLETS rap sheet in appellant's name (exhibit No. 5). The prosecution also introduced the record of conviction for a 1995 case which was not alleged as a prior strike in the amended information, but the documents included references to appellant's other prior convictions (exhibit No. 6).

The prosecutor stated that only exhibits No. 2 and 3 would be introduced to the jury. Defense counsel objected to exhibit No. 6 as irrelevant because it was not based on the charged prior strike allegations. The court overruled the objection since the exhibit was circumstantial evidence of appellant's identity for the other prior convictions. Defense counsel did not otherwise object to documentary exhibits Nos. 1-6.

The prosecutor also introduced exhibit No. 7, which was from appellant's parole file and was not a certified document, but it contained appellant's signature which would match his signature on the records for his 1989 prior conviction. Defense counsel objected and asked who would testify as to the authenticity of the signature. The prosecutor explained he was going to call appellant's parole agent. Defense counsel objected and the court overruled the objection.

Thereafter, parole agent Chris Smalling testified (outside the jury's presence) that appellant was currently on parole on his caseload. Agent Smalling reviewed the documentary exhibits and testified the photographs in the documents depicted appellant, and set forth the chronological history of appellant's convictions and status with the California Department of Corrections (CDC). The prosecutor asked Smalling to review exhibit No. 7, and he explained it consisted of CDC's notice and parole conditions for appellant, prepared in the regular course of business for parolees, and he recognized appellant's signature on the document. Agent Smalling also identified appellant's signature on the other documentary exhibits.

Defense counsel did not object to the exhibits, but asked Smalling if he saw appellant sign exhibit No. 7, the conditions of parole. Smalling said he did not.

Defense counsel did not present any evidence, but argued the documents were insufficient to identify appellant as the person who suffered the 1989 robbery conviction. While appellant's signature was on a document regarding that conviction, Smalling admitted he did not see appellant sign that particular document and simply relied on his belief about the similarities between the signatures. Defense counsel argued the handwriting was not consistent, and the prosecution failed to introduce any fingerprint evidence to connect appellant to the 1989 prior conviction. The prosecutor replied that he did not have to introduce "anything other than the name" under <u>People v. Mendoza</u> (1986) 183 Cal.App.3d 390, 401 (Mendoza), and there was a presumption of identity when the first and last names match and there was no countervailing evidence. The prosecutor also argued there were several examples of appellant's signature in the certified documents, and those signatures matched the signature on exhibit No. 7. There was also a fingerprint card in the CLETS documents but "basically we've reached the presumption" and there was no countervailing evidence to dispute his identity.

The court found the person convicted in the exhibits had the same name as appellant, the signatures in the documents for the 1989 Alameda County conviction were substantially similar to appellant's signature in his parole records, and the 1989 Alameda County conviction was listed among appellant's other convictions in his CLETS rap sheet. The court found "ample evidence" appellant was the same person named in exhibits Nos. 2 and 3, and the prior convictions were serious felonies within the meaning of three strikes.

When the jury returned to the courtroom, the court instructed them that exhibit

1    Nos. 2 and 3 had been admitted into evidence. Neither party introduced additional
     evidence before the jury as to the prior convictions. In the course of the instructions
2    on the substantive offenses, the court instructed the jury that if it found appellant
     guilty of a crime, it had to determine whether the prosecution proved beyond a
3    reasonable doubt the additional allegation that appellant was previously convicted of
     other crimes.
4           "... It's already been determined that [appellant] is the person named in
     Exhibits 2 and 3. You must decide whether the evidence proves whether [appellant]
5    was convicted of the crimes alleged."
            The court read the two prior conviction allegations, and instructed the jury to
6    only consider these allegations in determining whether appellant was previously
     convicted of the prior offenses, and not as proof that he committed any of the current
7    charges.

8    **Ground Five**

9           Petitioner claims that the trial court's factual finding of his identification relating to his prior

10   convictions violated his right to jury trial.

11          "[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial

12   guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the

13   maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven

14   beyond a reasonable doubt." Jones v. United States, 526 U.S. 227, 243, n.6 (1999). Apprendi v.

15   New Jersey, 530 U.S. 466 (2000), later extended that holding to cover cases involving state statutes

16   by way of the Fourteenth Amendment. Apprendi, 530 U.S. at 489 ("[O]ther than fact of a prior

17   conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum

18   must be submitted to a jury, and proved beyond a reasonable doubt"). The Supreme Court has

19   unwaveringly held that prior convictions are excepted from the general rule for several reasons.

20   Historically the court notes that "recidivism . . . is a traditional, if not the most traditional, basis for a

21   sentencing court's increasing an offender's sentence." Id. at 488 (quoting Almendarez-Torres v.

22   United States, 523 U.S. 224, 244 (1998)). Furthermore, "recidivism does not relate to the

23   commission of the offense." Apprendi, 530 U.S. at 496. The Supreme Court goes on to explain that

24          there is a vast difference between accepting the validity of a prior judgment of
     conviction entered in a proceeding in which the defendant had the right to a jury trial
25   and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and
     allowing the judge to find the required fact under a lesser standard of proof.
26   Id.

27          Petitioner claims that the question of whether he was the person named in the documentary

28   exhibits of the prior strike convictions is a material fact that should have been presented to the jury.

1  (Pet. at 8.)  The relevant California statute, California Penal Code Section 1025, provides in part:

2          (b) Except as provided in subdivision (c), the question of whether or not the
      defendant has suffered the prior conviction shall be tried by the jury that tries the
3      issue upon the plea of not guilty, or in the case of a plea of guilty or nolo contendere,
      by a jury impaneled for that purpose, or by the court if a jury is waived.
4          (c) Notwithstanding the provisions of subdivision (b), the question of whether
      the defendant is the person who has suffered the prior conviction shall be tried by the
5      court without a jury.

6  Cal. Penal Code § 1025.

7          On appeal, Petitioner argued that Almendarez-Torres, the authority on which section 1025(c)

8  is based, has been eroded by subsequent case law.  The appellate court denied Petitioner's petition

9  based solely on state law grounds while preserving petitioner's "federal arguments for further

10 review."  Application of the standards set forth in AEDPA are significantly impeded where, as here,

11 the state court supplies no reasoned decision on Petitioner's federal claim. Delgado v. Lewis, 223

12 F.3d 976, 981 (9th Cir. 2000). Under such circumstances, the Court independently reviews the record

13 to determine whether the state court clearly erred in its application of Supreme Court law.  Id. at 982

14 ("Federal habeas review is not de novo when the state court does not supply reasoning for its

15 decision, but an independent review of the record is required to determine whether the state court

16 clearly erred in its application of controlling federal law"); see also Greene v. Lambert, 288 F.3d

17 1081, 1089 (9th Cir. 2002). Although the Court independently reviews the record, it still defers to the

18 state court's ultimate decision.  Because the appellate court did not address the merits of the federal

19 constitutional issue raised by Petitioner, this Court will make an independent review of the record to

20 determine if the alleged constitutional error denied Petitioner his Sixth Amendment right to a jury

21 trial.

22        This Court finds no support for Petitioner's argument that subsequent case law erodes the

23 well settled exception for past convictions.  The court notes that Apprendi specifically reiterates the

24 exception.  Apprendi, 530 U.S. at 489; see also Blakely v. Washington, 542 U.S. 296, 301 (2004)

25 (quoting Apprendi in applying the rule that "[o]ther than the fact of a prior conviction, any fact that

26 increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

27 jury, and proved beyond a reasonable doubt"); Shepard v. United States, 544 U.S. 13, 27 (2005)

28 (stating that "this Court has not yet reconsidered Almendarez-Torres, which draws an exception to

1    the Apprendi line of cases for judicial factfinding that concerns a defendant's prior convictions").

2    As it is well settled law that findings of past convictions need not be found by a jury to be true

3    beyond a reasonable doubt see e.g. Butler v. Curry, 528 F.3d 624, 633 (9th Cir. 2008) (applying

4    "Apprendi's bright-line rule" that excepts prior convictions from the constitutional jury and proof

5    beyond a reasonable doubt requirements), the State court in this case provided Petitioner with more

6    protection than required by federal law.  The State court only made a finding as to the fact that

7    Petitioner was the person named in the documentary evidence but left the determination as to

8    whether Petitioner had actually committed the past crimes to the jury.  As the appellate court's

9    finding that Petitioner was not denied his right to a jury trial is not an unreasonable application of

10   federal law, he cannot receive habeas relief as to Ground Five.

11      **Ground Six**

12          Petitioner claims that counsel was constitutionally ineffective by conceding that Petitioner

13   has suffered the alleged prior strike convictions.

14      *Factual Background*[5]

15   [T]he court found appellant was the person named in the documentary exhibits of the
     prior strike convictions, and instructed the jury accordingly. Neither party introduced
16   additional evidence, and the jury was instructed to review exhibit Nos. 2 and 3 to
     determine if the prior strike convictions were true.

17          During closing argument, the prosecutor advised the jury that if it found
     appellant guilty of any offense, it had to review exhibit Nos. 2 and 3 and determine
18   whether he also suffered the prior convictions.

19          "... You don't have to determine the identity; it's already been done. [¶] All
     you have to do is determine whether [appellant] was convicted. What you do is look
20   here: [Appellant] having been convicted on June 21st, 1989. Now, I doubt very much
     that [defense counsel] is going to come up here and tell you any differently. This is
21   not a serious issue in the case. You might say why are we doing this? It's part of the
     jury's job."

22          The prosecutor noted the documents showed appellant was convicted by plea
     in the other prior conviction allegation.

23          Defense counsel began his closing argument by addressing the prior
     conviction allegations, and said there was "no dispute" appellant suffered prior felony
     convictions in 1989 and 1992, then immediately moved on to the substantive
24   offenses.

25          "But what is in dispute is this third thing you need to analyze; and that is this
     heroin and who possessed it, more specifically whether [appellant] knew of its
26   presence, whether he knew that Mr. Melton or anyone else in that vehicle might have
     had that heroin."

27          Defense counsel continued with his discussion of the prosecution's burden of

28

[5] People v. Leon, No. F050100, 2007 WL 2367852, at *11-12 (Cal. Ct. App. Aug. 21, 2007); (Lodged Doc. 1, 19-20).

proving the substantive offenses, the lack of direct evidence, and the speculative nature of the circumstantial evidence in this case. Defense counsel conceded appellant said some things to Officer Johnson after he was arrested, but noted appellant never took responsibility for the heroin found in the truck, and cited appellant's prior convictions as the explanations for his statements.

"Remember, he has two prior felony convictions so he knows, regardless, he's in trouble. So he's looking for a way to mitigate or minimize any adverse effects. He does not do anything to accept responsibility though for this crime because there is no evidence of any responsibility on [appellant] of this crime. Speculation is all we have."

The jury found both prior strike convictions true.

*Analysis*

Petitioner claims that his trial counsel was ineffective by conceding that Petitioner had suffered the two prior strikes alleged against him.

As set forth in Ground One, an allegation of ineffective assistance of counsel requires that a petitioner establish two elements: (1) counsel' s performance was deficient and (2) petitioner was prejudiced by the deficiency.  Strickland, 466 U.S. at 687; Lowry, 21 F.3d at 346.

The appellate court found that counsel's conduct did not fall below an objective standard of reasonableness.  In reaching this conclusion, the court did not rely expressly on federal law.  Instead, the court relied on People v. Murry, 30 Cal. 4th 342, 389 (2003), which cites Strickland's standard.  As the California and federal standards are the same, the Court reviews Petitioner's ineffective assistance of counsel claim to determine whether the appellate court's decision was an unreasonable application of the federal law.

Here, the appellate court found that "[t]he entirety of the record sets forth a clear tactical reason for defense counsel's closing argument in this case."  By conceding that Petitioner has suffered the prior strike convictions, "counsel tried to blunt the impact of [Petitioner]'s postarrest [sic] statements through the existence of [Petitioner]'s two prior strike convictions." (Lodged Doc. 1, 21.)  The appellate court's analysis that counsel's strategy to use the prior strikes to explain Petitioner's postarrest statements is not an unreasonable application of federal law given the high level of deference that a court must accord counsel's performance.  Strickland, 466 U.S. at 680.  As Petitioner did not prove that counsel's performance fell outside "the wide-range of reasonable professional assistance," the Court will not second-guess counsel's tactics.  Accordingly, Petitioner cannot be granted habeas relief as to this ground.

**Ground Seven**

Petitioner claims that the use of a CLETS rap sheet is insufficient evidence to prove prior strikes thereby violating his Fifth and Fourteenth Amendment rights.

As discussed above in Ground Three, the test to determine whether a factual finding is fairly supported by the record is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also McDaniel, 130 S.Ct. 665 (2010) (reaffirming the standard set forth in Jackson). In this case, the State appellate court found that Petitioner's claim was meritless as the California Supreme Court specifically held that a CLETS record is admissible to prove a prior conviction in People v. Martinez, 22 Cal. 4th 687, 115-116 (2000).

The CLETS rap sheet named "Craig Christopher Leon," born September 8, 1961, and contained Petitioner's physical description and the same two prior strike convictions alleged in the amended information. While the CLETS rap sheet alone is enough for a rational trier of fact to find that Petitioner was the same man identified in the prior strike conviction, the appellate court found further "overwhelming evidence" in the record supporting the superior court's finding of Petitioner's identity with regard to the prior strike convictions and that Petitioner presented no evidence to the contrary. The appellate court noted that the amended information filed against Petitioner was for "Craig Christopher Leon," born September 8, 1961, and alleged both prior strike convictions. Petitioner never claimed that the amended information was in error. Further documentation from the Alameda County Superior Court and the Stanislaus County Superior Court corroborated that "Craig C. Leon" and "Craig Leon," both born September 8, 1961, had been charged and convicted of the same prior strike convictions listed in the amended information. Additionally, evidence from the CDCR confirmed "Craig Leon's" birth date, physical description, fingerprints, and tattoos. Lastly, Petitioner's parole agent testified that the Craig Leon in the photograph provided by the CDCR was the same Craig Leon as Petitioner. In light of the overwhelming evidence regarding Petitioner's identification with regards to the prior strike convictions, the Court finds that the appellate court's decision is not an unreasonable application of federal law. Thus, Petitioner cannot receive habeas relief as to this ground.

1   Ground Eight

2       Petitioner claims that the trial court abused its discretion by refusing to strike Petitioner's

3   prior strike conviction in violation of his Due Process rights and the Eight Amendment's protection

4   against cruel and unusual punishment.

5       **Background**[6]

6       A. The Probation Report
            On February 14, 2006, the probation report was filed. It stated that appellant
7   refused to be interviewed or provide a written statement for the purposes of the report.
    The probation report sets forth appellant's lengthy criminal record, which primarily
8   occurred in Alameda County. In September 1980, he suffered a misdemeanor
    violation of section 647, subdivision (f), disorderly conduct, and was placed on
9   probation. In August 1981, he was found under the influence and placed on probation.
    In September 1986, he was again convicted of a misdemeanor violation of section
10  647, subdivision (f) and placed on probation. In February 1987, he was convicted of a
    misdemeanor violation of section 484, subdivision (a), theft, served 180 days in jail,
11  and placed on probation. In May 1988, he suffered a misdemeanor conviction for a
    misdemeanor violation of section 459, served 360 days in jail, and was placed on
12  probation. In July 1988, his probation was terminated and he served 90 days in jail. In
    January 1989, he suffered a misdemeanor conviction for section 459 burglary, served
13  60 days in jail, and placed on probation. Later that month, the probation was modified
    to service of an additional 300 days in jail.
14          In April 1989, appellant was convicted of second degree felony burglary (§
    459), and placed on three years' probation, with six months in jail. In December 1989,
15  appellant was placed on three years of probation for his conviction of robbery, one of
    the underlying strikes in this case.
16          In July 1991, appellant was convicted in Stanislaus County of misdemeanor
    being under the influence of a controlled substance (Health & Saf.Code, § 11550),
17  and received 120 days in jail. In January 1992, appellant was convicted of robbery in
    Stanislaus County, and sentenced to two years in prison, which is the second strike in
18  this case. In June 1993, he violated parole. Also in June 1993, he was convicted of
    felony petty theft with a prior, and sentenced to two years in prison. In December
19  1994, he violated parole. In April 1995, he was convicted of misdemeanor being
    under the influence of a controlled substance (Health & Saf.Code, § 11500), and
20  sentenced to 120 days in jail. Also in April 1995, he was convicted of a felony
    violation of section 496, subdivision (a), receiving stolen property, and sentenced to
21  eight years in prison.
            The probation report also contained a statement from appellant's parole
22  officer:
            "[S]ince the [appellant] was released on parole supervision on March
23      25, 2003, he has been continued on parole a total of five times for
        violations including the use of methamphetamine, heroin, cocaine and
24      codeine. On September 11, 2003, the [appellant] was returned to
        custody for failure to report, use of methamphetamine, heroin,
25      traveling beyond 50 miles, possession of a controlled substance for
        sale and possession of drug paraphernalia." As a result of that arrest,
26      the [appellant] was scheduled to begin a jury trial in Stanislaus
        County; however, [he] was arrested for the instant offense the day
27      prior. .... "[Appellant] has a serious problem regarding the use of

28
    _____
        [6] People v. Leon, No. F050100, 2007 WL 2367852, at *17-20; (Lodged Doc. 1, 28-33).

controlled substances specifically heroin. It is also apparent by his actions that rather than becoming a productive member of society, [appellant] prefers to earn a living selling controlled substances."

The probation report found the aggravating circumstances were that appellant's prior convictions were numerous and of increasing seriousness, he was on parole when he committed the current offenses, and his prior performance on parole was unsatisfactory. There were no mitigating circumstances. The probation report recommended imposition of the third strike term of 25 years to life for count I.

B. Appellant's Motion to Dismiss

On March 1, 2006, the sentencing hearing was scheduled but the court granted appellant's motion for a continuance. At that hearing, appellant apparently indicated that he was now willing to speak with the probation officer.

Also on March 1, 2006, appellant filed a motion to dismiss the prior strike convictions pursuant to section 1385 and Romero. Appellant argued he was only 26 and 29 years old when the prior strike convictions occurred, respectively, in 1989 and 1992, and nearly 13 years had passed; appellant's current convictions were for nonviolent drug offenses; and he had a serious drug problem, based on the statements contained in the probation report. Appellant acknowledged he suffered other convictions after the 1992 strike prior, but those convictions demonstrated his need for drug treatment.

On March 13, 2006, the prosecution filed opposition and noted appellant was on parole when he committed the current offenses, he was routinely arrested, he failed to previously comply with parole conditions, and he initially refused to cooperate with the probation officer in this case.

C. Appellant's Statement

On March 17, 2006, a supplemental probation report was filed which contained appellant's statements to the probation officer.

I ran across a friend that needed a ride. He offered me $10.00. I was out on bail, and I told my friend if he had any drugs or rigs on him I wasn't giving him a ride, because I was going to trial the very next day. Around 10:00 or 11:00 a.m., I ran a stop sign and got pulled over by the police. I pulled over, and I knew if I had any drugs on me I was looking at 25 years to life. I offered the police officer my driver's license, registration and proof of insurance. He, (the officer), asked me to step out of the truck and he searched me. He, (the officer), took me to the rear of the truck at the tailgate and put me in handcuffs. He, (the officer), went back to the drivers side of the truck and stuck his head in, and then went to the passenger side of the truck and talked to my passenger. My passenger talked back to him, (the officer), and then he, (the officer), told the passenger to leave. The officer then searched my truck and found the drugs on the dashboard in front of the steering wheel. What I think is weird is when he let the passenger go without searching him and then the drugs were found in my truck. The police said I was transporting drugs, but if they'd searched the passenger, they may have found drugs or outfits or a gun on him.

Appellant further stated that he knew his passenger used drugs but he would not have allowed him into the truck if he knew about the drugs. Appellant complained he had never been in a drug program or offered treatment. He had been on methadone for the past year but "[t]hat program was hard for me to get into because I have no drug priors. This is my first drug case." Appellant asked for the court to give him the previous plea offer of 13 years and send him to Delancy Street.

Appellant completed the 11th grade but never graduated high school or obtained his GED. Appellant stated he had been living in Turlock for the eight months prior to his arrest in this case, with his girlfriend and her children. Appellant

had learned the trades of painting, carpet and linoleum flooring, and roofing, and described himself as a journeyman in each field. At the time of his arrest, he was not employed. He previously worked as a floor installer in 1994, and also worked as a painter for six years but did not specify the time period.

Appellant said he started drinking at a young age, about seven years old, but quit drinking when he was 18 years old because of his drug use. Appellant started smoking marijuana when he was 15 years old. He injured his knee when he was 16 years old and was placed on pain medication for one year. After that time, he was "strung out"on pain medication and could not sleep without the medication. He started taking Valium to sleep. He had surgery when he reinjured his knee, and was on and off pain medication for one year. He started using heroin when he was 18 years old because it took away the pain and made him feel good. He described himself as a "functioning addict." He tried methamphetamine and cocaine when he was 18 years old but he did not like the effects of the drugs. Appellant said he injected approximately a quarter gram of heroin per day. He described his physical health as bad, that he was previously run over by a car, and "somebody shot cocaine and heroine [ sic ] in the backs of my legs." He also described his mental health as not being good, and he was depressed at the prospect of a third strike life term.

D. The Sentencing Hearing

At the sentencing hearing, defense counsel requested the court to exercise its discretion and dismiss at least one of appellant's prior strike convictions. The strike priors were 13 and 15 years old, and significant time had passed since those convictions. Counsel also argued appellant had a very serious drug addiction which gave rise to the case, he had never previously received treatment, and he needed treatment instead of punishment.

The prosecutor replied there was no reason to dismiss any of the prior strike convictions. While a significant amount of time had passed, appellant had been in custody fairly consistently a great deal of that time. "He keeps getting arrested, violated on parole and put in prison," and that was one of the reasons why "he's not out committing crime because he's in custody." As for drug treatment, the prosecutor pointed to appellant's statement in the probation report that a treatment program was hard to get into because he did not have any prior drug convictions. The prosecutor noted appellant had two prior drug convictions and violated parole based on drug use, and he could have walked into a treatment program at any time.

The court denied appellant's motion to dismiss the prior strike convictions:
I've seen-since the passage of the Three Strikes Law, I have seen a number of cases in which I've been asked to strike priors under [section] 1385 including some cases before we were aware that we had the power to strike priors under [section] 1385, and there have been some cases in which I had some considerable doubts as to whether it was fair to impose a sentence of this type. I don't have any such doubts in this particular case.
[Appellant's] record is such that he is not at any time since the start of commission of the strike offenses stayed free of contact with law enforcement or out of trouble or out of prison. I don't find any grounds that cry out within the interest of justice for striking of a prior conviction....

**Analysis**

The State appellate court found, according to California law, that Petitioner does not fall

outside the "spirit" of the three strikes law, thus his prior strike conviction did not require dismissal.

(Lodged Doc. 1, 33.)  The question of whether Petitioner falls outside the "spirit" of the three strikes

1  law is purely a matter of state law.  As a federal habeas court will only review for constitutional

2  violations, not abuse of discretion, <u>Williams v. Borg</u>, 139 F.3d 737, 740 (9th Cir. 1998), this Court is

3  bound by the State court's decision.  <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005) ("We have

4  repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in

5  habeas corpus").  However, the State court did not address Petitioner's Fifth, Eighth, and Fourteenth

6  Amendment claims.  The Court now turns to those claims.

7       *Due Process*

8       Petitioner contends that his Fifth and Fourteenth Amendment rights to due process of law

9  were violated when the superior court judge abused his discretion in failing to strike one of

10  Petitioner's prior strike convictions.

11       Petitioner did not present his due process claim to the State supreme court, nor was it

12  addressed by the State appellate court.  Accordingly, the Court reviews this claim de novo.  <u>Wiggins</u>

13  <u>v. Smith</u>, 539 U.S. 510, 534 (2003) ("In this case, our review is not circumscribed by a state court

14  conclusion with respect to prejudice, as neither of the state courts below reached this prong of the

15  <u>Strickland</u> analysis"); <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005).

16       "State prisoners are entitled to habeas relief under 28 U.S.C. § 2254 only if their
        detention violates the Constitution or a federal statute or treaty. [citation omitted].  A
17       state court's procedural or evidentiary ruling is not subject to federal habeas review
        unless the ruling violates federal law, either by infringing upon a specific federal
18       constitutional or statutory provision or by depriving the defendant of the
        fundamentally fair trial guaranteed by due process." [Citations omitted].

19  <u>Walters v. Maass</u>, 45 F.3d 1355, 1357 (9th Cir. 1995).  A prisoner has been denied due process of

20  law when the admission of a piece of evidence "so fatally infected the proceedings as to render them

21  fundamentally unfair." <u>Jammal v. Van De Kamp</u>, 926 F.2d 918, 919 (9th Cir. 1991).  The question

22  before the Court is whether the superior court judge's decision not to strike one of Petitioner's prior

23  strike convictions so fatally infected the trial as to render it fundamentally unfair.

24       The Court finds that the superior court's decision to impose both prior strike convictions

25  against Petitioner was not fundamentally unfair.  The superior court's decision is supported by

26  Petitioner's prior convictions, the increasing seriousness of his crimes, and the fact that he was on

27  parole when he committed the underlying offense.  Between 1980 and 1995, Petitioner was

28  convicted of misdemeanor disorderly conduct twice, misdemeanor theft, misdemeanor burglary

twice, second degree felony burglary, misdemeanor under the influence twice, once with possession, felony robbery, and felony petty theft with a prior.  Petitioner also suffered numerous violations of probation and was sent back to prison in 2003 after violating parole for failure to report, use of methamphetamine, heroin, cocaine, and codeine, possession of a controlled substance and sale and possession of drug paraphernalia. In light of Petitioner's lengthy criminal history and the fact that the intent of California's Three Strikes law is to punish recidivism, People v. Williams, 34 Cal. 4th 397, 404 n.4 (2004);  People v. Carmony 33 Cal. 4th 367, 375-76 (2004), it was not fundamentally unfair for the superior court to impose both prior strike convictions upon Petitioner.  Accordingly, Petitioner is not entitled to habeas relief as to this claim.

*Eighth Amendment*

Petitioner claims that his indeterminate sentence of fifteen years to life is cruel and unusual punishment in violation of the Eighth Amendment because he clearly has a drug problem for which the CDCR does not provide adequate treatment.  (Lodged Doc. 2, 36-38.)

Petitioner raised this argument in his petition to the California Supreme Court, which, by its summary denial, is presumed to have denied the Eighth Amendment claim.  The appellate court did not address the Eighth Amendment claim in its decision but made its determination based solely on State law.  As there is no reasoned decision on this constitutional issue, the court will conduct an independent review of Petitioner's Eighth Amendment claim.  See Delgado, 223 F.3d at 981.

A criminal sentence that is not proportionate to the crime for which a defendant is convicted may violate the Eighth Amendment.  In Lockyer, 538 U.S. at 71, the Supreme Court discussed the current state of Eighth Amendment proportionality review and held that the only clearly established governing legal principle is that "gross disproportionality" review applies to criminal sentences for a term of years.  Id. at 1173.

In Ewing v.  California, 123 S. Ct.1179 (2003), the Supreme Court again reviewed its Eighth Amendment jurisprudence, choosing to adopt the view that "the Eighth Amendment does not require strict proportionality between the crime and the sentence.  Rather it forbids only extreme sentences that are 'grossly disproportionate' to the crime."  Ewing, at 1186-1187.

Petitioner does not argue that his sentence is disproportional to his crime.  As proportional

review is the only clearly established federal law pertaining to the Eighth Amendment, Petitioner's claim is not cognizable on federal habeas review. Petitioner does not point to, nor does the Court find, any clearly established federal law which holds that the Eighth Amendment protects a prisoner's right to an adequate substance abuse treatment program.  According to clearly established federal law, the Court finds that Petitioner's sentence was not "grossly disproportional" to his crime in light of Petitioner's criminal history spanning over twenty-five years and the legislative intent of California's Three Strikes law to punish repeat offenders. Accordingly, Petitioner cannot receive habeas relief as to his Eighth Amendment claim.

## CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus is denied.

## CERTIFICATE OF APPEALABILITY

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)     (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denies a petitioner's petition, the court may only issue a certificate of appealability

1   "if jurists of reason could disagree with the district court's resolution of his constitutional claims or

2   that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

3   further." <u>Miller-El</u>, 537 U.S. at 327 (citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  While the

4   petitioner is not required to prove the merits of his case, he must demonstrate "something more than

5   the absence of frivolity or the existence of mere good faith on his . . . part." <u>Miller-El</u>, 537 U.S. at

6   338 (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

7         In the present case, the Court finds that reasonable jurists would not find the Court's

8   determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

9   deserving of encouragement to proceed further.  Petitioner has not made the required substantial

10  showing of the denial of a constitutional right.  Accordingly, the Court hereby declines to issue a

11  certificate of appealability.

12                                              **ORDER**

13        Accordingly, IT IS HEREBY ORDERED that:

14        1) the petition for a writ of habeas corpus be DENIED;

15        2) the Clerk of Court be DIRECTED to enter judgment in this matter; and

16        3) the Court DECLINES to issue a certificate of appealability.

17  IT IS SO ORDERED.

18  **Dated:   August 6, 2010**                          **/s/ John M. Dixon**
                                          UNITED STATES MAGISTRATE JUDGE